Good morning, Your Honor. May it please the Court, I'm Daniel Johnson for the Plaintiff and Appellant Nathan Riensche. And it's Riensche. I first wanted to address the effect of this Court's recent decision in Peck v. Cingular Wireless. There are three causes of action in this case. The breach of contract claim, the Consumer Protection Act claim, and the Declaratory Judgment Act claim. The District Court's first order in this case dismissed all three of those causes of action to the extent that they relied upon I'm sorry to interrupt you, Your Honor, but you see the Declaratory Judgment Act claim, Declaratory Judgment based on what substantive cause of action? The B&O tax statute, which was just about to come out. So that basically really is the Consumer Protection Act case statute once again, right? That's the preemption issue. Right. So my threshold point is that the three causes of action were all brought in part based upon the B&O tax statute. And to that extent, they were all dismissed and all should be reinstated based upon the Peck decision. And what remains before you today is what was never addressed in the Peck case, which is alternative grounds for a Consumer Protection Act claim on these facts and a breach of contract claim. Those issues were decided in the Court's last order in this case. All issues... But if we vacate and reverse on the authority of Peck, why doesn't that reopen all those issues? Reopen all the issues that... You're going to have to help me with the procedural history here. The case was we would vacate the district court's order of dismissal on grounds of federal preemption and remand to reinstate those claims for further proceedings, which presumably then would include, what, another round of summary judgment briefing or maybe trial on the merits? Right. Well, there's a class certification stage to go through as well that was never reached here. Okay. But your point is we still need to address those issues because the district court ruled alternatively? Yeah. So, as I said, the three causes of action were all dismissed in the first order based on preemption to the extent that they relied upon and to the extent that our basis for those claims was the B&O tax statute, the illegality of this practice under that statute. But the district court recognized in this case and not in Peck, frankly, that there were alternative grounds pled in the complaint. For example, under the Consumer Protection Act, that the failure to disclose a loan is a violation of that act, notwithstanding that there's a statute on the subject that the court felt was preempted. Now, let me ask you about the Consumer Protection Act. The Schnall case helps you. I saw that Judge Zille expressed some hesitation as to whether or not it was correctly decided, and my law clerk has discovered what you people may know but haven't yet told us, that the Washington Supreme Court has taken the case. Is that right? Yes. I'm sorry if that didn't come through on the briefing. I would have assumed that. Well, maybe it's in the briefing, but in any event, I didn't see it in the briefing, but my law clerk discovered this. So we know the Washington Supreme Court has taken Schnall, and depending on what happens to Schnall, you may or may not have a good cause of action depending on reliance. Who knows what's going to happen? Right. On the alternative grounds that are here before this court, that's right, the causation issue is present. The causation issue that was addressed somewhat in indoor billboard and will be further addressed in Schnall by the Supreme Court is present in this case. That's right. I would urge this court, since Judge Zilley didn't decide that issue, that this court don't decide that issue either. You just want us to send it back, period? Right. I think that the basis for the judge's dismissal is that there was no deceptive act, prong number one under the Consumer Protection Act. He didn't reach the argument that Singular made there and makes here that we can't prove any form of causation. And so for that reason, I mean, we argue that the district court was wrong in its interpretation of the law on deceptive act, or it should be reversed and the claim remanded. And I'd be happy to talk about why the causation issue doesn't provide an alternative ground for Singular here to affirm, depending on what the court does. If the state Supreme Court is going to decide issues relating to causation under the Consumer Protection Act in Schnall, it would be imprudent for us to opine on it, would it not? Because our interpretation would not be binding on state courts. And to the extent you have a state law claim, it's whatever the state Supreme Court says the state law is. That's right. That's actually exactly what I'm saying, is that I don't think that this court should address in any substantive, should opine on causation, which I think is what Singular is asking this court to do. Well, and is it possible that Schnall will talk about what constitutes deceptive practice as well? I'm reluctant to get in the way of this, or I'll say it this way, to anticipate something that the Washington Supreme Court is going to say because obviously they control the question. Yeah, no, I don't think that it will. The one thing it did in indoor billboard is it did hold that a deceptive act was proven on a summary judgment standard by the plaintiff in that case. But that wasn't the main issue that it took review on. Certainly in Schnall, the main issue is a Rule 23 class certification question. So I don't think that that's likely, and I don't think that the issues before this court regarding what constitutes a deceptive act or practice under Washington law are issues that are really up in the air at all in Washington. You may or may not know the answer to this. When are we likely to get a decision from the Washington Supreme Court in Schnall? I would love to know the answer to that. Has it been argued? It has been argued. It was argued in October. In recent years, I've seen opinions come out up to 19, 20 months after argument out of that court. But I believe the court has made a really sustained effort to shorten that time. But I think the answer is nobody has any idea. We don't know. It could be a year from now. Yeah. Okay. So I wanted to talk about deceptive practice first. Again, this is an area where the court was obliged to interpret Washington State's substantive law, and it reached legal conclusions about the Consumer Protection Act, which are contrary to Washington law. The district court found that there was no deceptive act or practice on the facts here, that it could not be shown that there was a deceptive act or practice. It ignored Washington law on what constitutes a deceptive act or practice. There is clear law that the failure to disclose the true and full price of a good or service before entering into a contract is a deceptive act or practice. It has the capacity to deceive the public. Well, and it's possible, it seems to me, that the district judge would change his mind once he realizes that the B&O tax statute is not preempted. Well, again, I think there are two alternative bases for finding a violation of the Consumer Protection Act, one being you can't impose a charge in a manner that is illegal under state law over here, the B&O tax statute. The other being you can't impose a charge you didn't disclose before you contracted with the consumer. You can't add something after the fact. So what's before us here today is this, the nondisclosure. And I think those are two alternative grounds for the tax claim. You see, if it were legal to add the B&O tax as a pass-through, which I think Judge Gilly decided it was because the B&O statute, in his view, was preempted in this context. He might be right, that is to say it wasn't deceptive, because there's lots of language. I mean, ten ways from Sunday, they've written language that allows them to pass through various things. But as soon as it's not legal to do that, I think the question of deceptiveness comes up in a very different way because anybody reading that contract is going to say, well, obviously, they can't pass through things that are illegal to pass through. That's right. And once they start doing it, that sounds as though they've got a deceptive practice on their hands. And I'm not at all sure, in other words, that Judge Gilly would come to the same conclusion on the deceptiveness question once he knows, because PEC 2 decided, that the B&O statute is not preempted. That's right, Your Honor. But the reason we're here today is what he said about an independent deceptive claim, the failure to disclose claim. And what he said was quite remarkable. It was very surprising to people who practice in this area. Because while you mentioned, Judge Fletcher, that there are a lot of places, Six Ways to Sunday, that they talked about things in these disclosures, that's actually not the case. I mean, it is undisputed, Mr. Renci was never given a single piece of information about this charge. Now, mind you, the cases say, the Nelson v. National fundraising case and the Robinson v. Avis case, they say that you have to disclose the fact and the amount of this additional charge prior to contracting under the CPA. They didn't even disclose the charge itself. The three things that are being relied upon are this contract, which the district court even acknowledged doesn't say anything about this charge. I mean, there are arguments about whether the B&O charge is never mentioned. Right. So we know it's not there. And we also know these rate plan brochures, the thing you see on the counter if you walk into a store, there's some disclosure in some fine print. But, A, Mr. Renci never received one. He signed up on the Internet. And, B, that disclosure in the fine print doesn't mention this charge by name, doesn't say what it's going to cost. And, in fact, I think clearly suggests it's a tax. It's a government-mandated charge on the consumer. So that, I don't think, helps. And that leaves him with this website disclosure, which I think the record before you, Your Honors, doesn't even have a disclosure. I can't read it. I think that there's... But the problem I think your client has is that he never read it. So regardless of what it says, he can't really rely on the existence or non-existence of it if he didn't read it. Well, that's right. And I think this was one of the problems with the district court's conceptualization of this claim is that our claim is based on an omission, a lack of disclosure. So the point here is Mr. Renci never saw this. And it wasn't explained to him. It wasn't disclosed to him. So you're absolutely right. So if it's not in there, then it doesn't matter whether he saw it or not. That's right. At least that's what Schnall seems to say. Yeah. Well, and I think that's what every case on what constitutes a deceptive act of practice does say. This is a failure to disclose case before this court. Yeah, sure. That's your Schnall argument. Before your time runs too much, and I realize the dollar amount is very small, I'm puzzled as to what to do with the sanction order on instructing your client not to answer an attorney-client privilege. I have to say I'm very frustrated by the briefs on both sides because it's not made clear to me precisely what it was that was argued to Judge Zille and then Judge Zille decided on the basis of what precise instructions were that he held were improper. What are we talking about? Well, I apologize for that. I don't think I can do much better than what the briefs say. I thought that the actual deposition testimony was before the court. Well, it is, but I'm trying to figure out what precisely both sides are relying on, the idea that it was or was not protected. I see. And the merit order doesn't tell me what it is that is or is not protected. Right. Well, it seemed clear to me, and I'd have to look again, Your Honor, and I'll try to do that. What you cited in your brief was page 184 of the excerpts in volume two. Yes. And that cuts off page 17 of the deposition. Well, what the other side does is to cite pages 373 and 4 and so on in the same excerpt, your excerpts that don't cut off at page 17. Now, I say on page 18, up until page 17, you've been saying to the extent that it would require you to reveal conversations, I instruct you not to answer. On page 18, that you do not refer me to, you say, or Mr. Breskin, rather, says, Mr. Renshaw, I direct you not to answer that question. It is an improper attempt to get at attorney-client privileges and information. There's no if in that instruction anymore. But I have to say, I'm kind of at a loss as to how to figure out precisely what it is you guys are fighting about. Yeah, I feel the same way, Judge Fletcher. I think that from our point of view, you know, the questioning did not go as one would write it for teaching law students. You know, but depositions rarely do. And I think what the upshot of this was that Singler's counsel wanted to know, wanted to be able to have evidence to prove that, you know, this plaintiff didn't come up with this claim. They're trying to prove that this plaintiff was recruited. Sure. Yeah. And there's nothing more to be gotten beyond the first deposition. That fact was established in the first deposition. What we returned to a second deposition for at the order of the district court was for them to divulge the exact substance of the conversation. Now, where's the order that says that? We were ordered to divulge the exact substance of the conversation. Well, of course, it doesn't say that. It says answer the questions on the ideation of the lawsuit. But clearly, Judge Zille couldn't have meant answer questions on ideology of the ideation of the lawsuit, even if it is attorney-client privileged. He didn't mean that. I think he did. I think that he felt that because this is a class action, and he cited this Bodner case from an unpublished decision from, I think, California District Court. I think he felt that this was an exception to the privilege. Let me ask a specific. I guess one of the more troubling questions that I found was on page 21 of the deposition at ER 377. And the question by Mr. Johnson was, do you know if Mr. Breskin is representing Mr. Peck in that case? And Mr. Breskin objects and says, again, I direct you not to answer the question if it relates to communications we've had. Could you explain to me how any conceivable answer to that question would invoke the attorney-client privilege with regard to the rendering of legal advice on the identity of who's representing Mr. Peck? Well, yeah, because Mr. Peck and Mr. Renci don't know each other. So any information that Mr. Renci has received about Mr. Peck has come from his attorney. But that doesn't make it attorney-client privilege. Well, I think that's why the all-important if comes in here, and it was stated correctly there. The instruction is don't go and say, well, Mr. Breskin said such and such about the Peck case, but I'm not sure about that. But the only question was, who's the lawyer? Do you know who the lawyer is who's representing Mr. Peck? And I don't see how any truthful answer to that question could elicit attorney-client privileged communication. That's not a privileged statement. Or to put it another way, the objection made by Mr. Johnson to the whole line of questioning, as I read it, was that Mr. Breskin was taking an overly broad view of what constitutes attorney-client privilege. And in reading the transcript, I tend to agree with Mr. Johnson. And as I read Judge Zilley's order, what he was saying is you can't just say to a witness generally, don't answer any questions with regard to any conversation we've ever had. The attorney-client privilege is not that broad. Well, I guess I'd say two things. One is that I think that if you read the judge's minute order that ordered this second deposition, in context it seemed clear to me, and I was an outside observer as well, that he was ordering these questions answered about the substance of the conversations. That's one thing. And it wasn't this passage that you... Even if the substance of the conversation is a statement by Mr. Breskin to Mr. Renshie, I am representing Mr. Peck in that lawsuit. That is not the rendering of legal advice. I don't see how the attorney-client privilege could ever cover that answer. Well, but you only have to look at the answers to the questions that Mr. Johnson asked, and they were predictable answers to the way the questions were phrased both times. I mean, maybe this is just a caution to all counsel in taking depositions, but you can't just be invoking the attorney-client privilege like it is some sort of invincible shield. Well, I think that's absolutely right. And like I said, I don't think this is a perfect record for either side. And we did point out the exact same instruction. Judge Zille abused his discretion in finding that the invocation of the attorney-client privilege was overly broad and that counsel basically engaged in deposition misconduct by obstructing the progress of the deposition while generally instructing his client, don't answer any questions with regard to any conversations that you and I have had. Well, our position is that's not what Judge Zille did. He ordered cause on a number of issues, the show cause order. And we didn't appeal that. We went ahead and we allowed the divulging of attorney-client communications. What we're appealing is the last order where he decided that based upon specific questions that are much narrower than what Your Honor just recited, that Mr. Bresson should be sanctioned. Now, what specific questions are you talking about?  But I still am not precisely sure the questions and directions not to answer that Judge Zille is unhappy about. I can see, for example, the deposition testimony in response that Judge Tolman just pointed to on page 21. For example, if I were Judge Zille, I might be after Mr. Bresson because he's changed. On page 17, Mr. Bresson says, again, if it would reveal attorney-client privileged communications, you can't answer. But by page 21, four pages later, he's saying it's broader. He says, if it relates to communications we've had. Well, that's a broader if. So it would be helpful to me if you guys could have sorted this out for me. And I have to say, maybe it would have been helpful. A district judge is busy, but I don't know exactly what it is that Judge Zille was relying on. I guess the only thing I can say is that our reading of the order directing the second deposition was, and both of my partners and me, of course, we sent a different attorney to the second deposition. We felt it was absolutely clear that we had to permit our client to describe the substance of the conversations he had with his attorney. That that's what the judge ordered. And that's specifically what he selected as the basis for the sanction order, based on this idea that a class-action plaintiff is different. And I haven't had a chance to address any voluntary payment issues. My time is well over, but I think you can read that. We've read the brief on that question. Let's hear from the other side. We've taken you well over. We'll give you a chance to respond. Good morning, Your Honor. Shelley Hall on behalf of the appellee's defendants here. I had planned to start by talking about the voluntary payment doctrine, but I think that perhaps I should start by talking about PEC and where we are and what claims are at issue and what that decision means to this case. I disagree with counsel's characterization that there were three claims, causes of action at issue, and Judge Zille dismissed all of them. Judge Zille dismissed only the declaratory judgment claims in his preemption order. The CPA claim in the complaint, which is in the record, does not address the B&O statute in its language. It simply, in the cause of action, goes through the elements of the CPA and says there's an unfair and deceptive practice here. That claim was not dismissed on preemption grounds at all. Although I have a feeling that Judge Zille might respond to that claim very differently if he knows that the B&O tax statute is not preempted and that you were not permitted to pass through that tax in the way that you did. I disagree, Your Honor, because the B&O statute was not preempted because it is a disclosure statute and simply requires that there be disclosure of a charge prior to passing it through to the customers. The B&O statute and the Nelson v. Applewhite decision as well as the Peck decision make clear that a company can place a surcharge on an invoice. It just needs to have the disclosures at the time of sale prior to the final purchase. Which wasn't done. We believe that the disclosures here were adequate both under the B&O statute and under the CPA's general statute. Do you think that your contract complies with the B&O statute? We do believe that the contract and the disclosures that were all available to Mr. Renshie cumulatively do comply with that. Oh, goodness. Well, I'll let you make that argument to Judge Zille, but it doesn't strike me as a great argument now that I've read Peck too. I've read the B&O statute. I've read Peck too. I don't think that's going to – I'm not sure I'm going to decide that question here, but were I Judge Zille, I would be skeptical. I understand, Your Honor. But regardless of that, the CPA is a separate statute with separate elements. And I think what might be going on here is a misunderstanding of how the B&O statute has an interplay with the CPA, if any. The state legislature can decide that particular statutes, a violation of a particular statute also equates to a violation of the CPA. Or it can decide that a particular statute, a violation of which leads to an automatic violation of the unfair and deceptive practice element of the CPA. We're not dealing with that sort of situation. That's the situation in the Nelson Fundraising Committee case, in which the Franchise Act, the legislature specifically decided that a violation of that act was going to equate to a violation of an unfair and deceptive practice element of the CPA. Not the case here. The CPA stands on its own, as its own statute with its own standards. And as Judge Zille ruled and as Judge Jones and Judge Peckman have ruled more recently, these disclosures in the contract, which are very similar to those in Smale and Loudon, the Judge Peckman and Judge Jones cases, are adequate to satisfy defeating a CPA claim based on the Unfair and Deceptive Practices Act. That's not going to change, regardless of the Peck 2 decision, because the CPA claim in the complaint is not linked to the B&O statute. And it was not dismissed by Judge Zille. Let me put the question this way. What if we or what if Judge Zille on remand, with our remanding in a sort of open-ended way, what if we or Judge Zille were to say that this contract violates the B&O statute? I understand that you want to argue that it does not, but assume that this contract violates the B&O statute. What your client did was to pass through the B&O charges and charge them to these customers, including Mr. Renshie. Is that a deceptive practice if what they've done is to violate the B&O statute under the CPA? And my answer is no, not necessarily. Because the premise of my question is you have charged an illegal tax. Your contract says nothing about B&O. It has sort of general talks about pass-through and so on, but it says nothing about B&O. You then tack on a tax as a part of the charge that was not mentioned specifically and is illegal. And you nonetheless say that's not deceptive? We do say that's not deceptive because there is not that link between the two statutes, the way there are with other statutes, such as the Franchise Act. But I'll take B&O out of it. And I'll just say you mention generally all kinds of charges, but without mentioning anything specifically. You then add up on a charge that is an illegal charge. You then collect money under the charge and you don't give it back. That's not deceptive? We disagree that it's deceptive because the disclosures are adequate for the CPA, as found in Smale and Loden in these types of cases. A general disclosure saying we're going to pass through surcharge charges for taxes, whether those taxes are on you or on us, is an adequate disclosure. No one's being deceived by that. And is there nothing in there that implies that we're only going to pass on charges and taxes that are illegal to pass on? I actually don't think that language is in there. I don't think so, although it's certainly implied. I mean, when I read a contract, I don't read it to say, well, they're going to pass on charges that are both legal and illegal. I'm assuming that they're going to pass on charges that are legal to pass on. And we believe that the disclosures are adequate, not just disclosures in the contract, but the disclosures that were available to Mr. Rinchey when he was signing up on the Web, too. Those, in my reading of Applewhite, should be considered as well, and they're definitely considered in all CPA settings. The information that was provided to a customer prior to the time of purchase. Mr. Rinchey had an option to look at the understanding you're built, see what it was going to look like and what type of charges were going to be on there. And it said there'd be a gross receipts charge and a gross receipts surcharge, and the B&O tax is a gross receipts tax. Similarly, the rate plan, which is incorporated into the contract, also references a gross receipts surcharge. And Mr. Johnson is actually incorrect about the language of the rate plan that was in effect. Counsel, you call it a surcharge, but the legislature calls it a tax. I'm looking at the language of the statute itself, RCW 82.04.500. Correct. And it is a tax on singular. If we were, frankly, if we were to put on the invoice and call it a tax, we would be implying it was a tax on the customer, which is why it's called a surcharge. It's not a tax on that customer, and we definitely have it under the category of other charges. Your argument that when the legislature says it is not the intention of this chapter that the taxes herein levied upon persons engaging in business, that's you, singular, be construed as taxes upon the purchasers or customers, that's Mr. Rinchey, but that such taxes shall be levied upon and collectible from the person engaging in the business activities herein designated, and that they'll be part of the operating overhead. How, in the face of that language, can singular take the position that it's permissible for them to pass that tax on to the consumer? Because, frankly, the Supreme Court of Washington in Nelson v. Applewhite says you can pass it on as long as you're providing disclosures. And there's been a follow-up case since Applewhite. Only one case I know of since Applewhite, the Camp v. Johnson Motors case, which I believe just came out last month in due of the citation, in which the court said, Division III said, that there was no violation, the tax was passed on as a surcharge, but because there was disclosure, the statute was satisfied. And I think that, frankly, is the kernel of Peck, the Ninth Circuit's decision there, is that this statute does not prohibit surcharges for the B&O statute. It is a disclosure requirement. If it were prohibiting the pass-through altogether, we'd have some difficult First Amendment issues here, we'd have some difficult Commerce Clause issues, and probably some more preemption issues. But the Peck decision avoided all that because it ruled, as Nelson ruled, that it's a disclosure requirement, not a prohibition. And so the premise that this is an unlawful charge to start with is simply not how the statute is structured and how it's been interpreted by the Supreme Court and then subsequently by Division III. And I do have that cite here for the Johnson v. Camp automotive case. And point me to the language in the disclosure that you say subsumes the B&O tax. Well, there are several disclosures. It will start with the terms and conditions themselves, which Mr. Wrenchy clicked to accept, although he did not read them. So they were available to him. He could have printed them. In that contract. Can you give me an excerpt of the record? Excerpt of the record, page 261. Okay. I have it. And where in 261? In the paragraph that says, charges include, without limitation, airtime, aroma, et cetera, et cetera. I don't have a magnifying glass to read this. Can you give me how many inches down in the 28-point type that I have? I actually don't have. I have an excerpt in front of me, not the actual page. But I am being handed the actual page. It is about one-third of the way down the page, after an all-caps section that ends with any such dispute. Okay. I'm with you. And in that provision, and this is the language that Judge Zille relied on as well, it talks about network and other surcharges, and then later says that you will be charged and applicable taxes and governmental fees, whether assessed directly upon you or upon singular. And that is similar to the Smale language, similar to the Loudon language, which a provider is saying we will have the right to pass on to you taxes that are assessed on us, even if they're not assessed on you. The reality being, as both the Loudon and the Smale decisions recognize, you can't list out every single possible charge that there might be, varying over jurisdictions, varying over time. Language, if we tried to do so, quite honestly, we'd probably be in a pickle because something would come up that wasn't in there, and then we'd have collateral out there in a store that wasn't encompassing what were the actual charges. And this ER-261 was the document that was online that, had he bothered to read it rather than clicking accept and not reading it, he would have seen it? Correct. Okay. And is there any other language? Is there similar language in the Welcome Kit? There is. The Welcome Kit that he was sent included another copy of this. Okay. So same language. Same language, right. And then these terms and conditions incorporate the applicable rate plan in place. The rate plan brochure, which is at supplemental excerpts of the record 2 and 26, states that Singular will impose the following, also imposes the following charges, and there are a couple listed, and a gross receipt surcharge. These are not taxes or government-required charges. Again, clarifying to the customer, it's not a tax on you, but we're going to assess it. I'm reading Appleway, and our decision in PEC 2, I mean it's our, I say corporatively, I mean none of us was on that panel, refers to Appleway and says, you know, you've got to have the B&O tax quoted as part of the price. It's not that you can't pass it through, you've got to quote it as part of the price. And this is what Appleway says. In other words, says Apple, says the court in Appleway, it's lawful for Appleway to disclose a B&O charge to Nelson during the course of negotiation of purchase price or later identify any claimed element overhead. However, Appleway may not add a B&O charge as one of several fees and taxes after Appleway and Nelson negotiated and agreed upon a final purchase price. Well, then the question becomes, what's an adequate notification ahead of time of the B&O tax? And there's a very interesting passage in Appleway where Appleway issues a notice that says, quote, relies on a notion of DOR, which says it's not illegal for a seller to itemize the B&O tax. The statute intends the B&O tax to be a part of the seller's overhead. However, it does not prevent the seller from itemizing and showing the effect of the tax. Quoting it, and the court says, you know, we look at however many notifications Appleway did, it wasn't enough. So it seems to me your argument based on Appleway is uphill work. As to whether any disclosure, whether the – As to whether or not you have made sufficient disclosure under the B&O statute to allow you to charge the B&O. And I will acknowledge there is no – Pardon me, entering into the contract. Yeah. I will acknowledge there have been no cases post-Appleway to tell us what exactly is enough, other than this Camp v. Johnson Automotive case. But the fact is that the statute does allow companies to pass that along, as long as there is disclosure. And disclosure before the contract is entered into, and disclosure as, quote, part of the price, close quote. Correct. Which we understand as being as part of the sale. The difficulty with Appleway is you're dealing with a used car situation. Yeah. And what your contract does, or at least as you would read the contract, it says we get to pass on the B&O tax, whatever it might be. If it's $10 this week, we pass that on. If it's $100 next week, we pass that on. Whatever it is. We're not telling you what it is because we're just going to pass it on, whatever it turns out to be. That doesn't sound as though that complies with the Apple – Appleway as part of the price. And I certainly understand and take your comments. I do think that, unfortunately, that gets us a bit afield because, as I said, the CPA claim in the complaint isn't linked to RCW 8204, and nothing the legislature has done has linked those two statutes. It might be one thing to bring a cause of action under RCW 8204. Yes, but you're pre-permitting our earlier conversation where I said, and this will be premised up on a reading of the B&O tax statute, if it is illegal for you to charge the B&O statute, for you to have general language not including B&O, and then to charge B&O, that sounds to me as though – I mean, that's kind of an ordinary lay application of the term. That sounds to me like it's deceptive, even though, of course, there's no explicit linking between CPA and B&O. I think CPA probably is best read as saying, if you charge an illegal tax without – if you charge something illegally without notifying that you're going to do so, that kind of sounds deceptive. If you don't notify people, yeah, it probably would be deceptive. But we believe that we have disclosures. But your position is that you disclosed it, and the statute doesn't forbid passing through if it's disclosed. Correct. Neither the B&O statute nor the CPA. And, in fact, the CPA's standard on unfair and deceptive isn't linked to another statute. It is, does this behavior have the capacity to deceive a substantial portion of the public? And as Judge Sully recognized and as other judges have recognized, when you have language that says, we're going to pass along stuff, whether it's a tax on you or on us, that doesn't have the capacity to deceive. We're not hiding the ball here. We're just not listing out every single possible charge because it wouldn't be realistic. And this, obviously, all this discussion really just goes to the CPA claim. And I do want to touch on the contract claim and the unjust enrichment claim, although I think I understand from opposing counsel they may not be challenging the dismissal of unjust enrichment. But those two claims, regardless of how one views the B&O tax statute or how one views the concept of unfair or deceptive practices under the CPA, those claims, Judge Sully's decision should be upheld because of the voluntary payment doctrine. We have a plaintiff here who consciously decided not to be. We read that. You're over and I'm not sure we want to spend much time on voluntary payment. Do you want me to discuss the sanctions issue at all? I do have a citation for you that I think might be helpful to you. An additional citation? It's in the record, the original minute order that Judge Sully issued, ordering the second set of depositions, ER 37. On the second page of that order, page ER 38, he includes three footnotes that list out specifically what he was bothered with. I think I've read that, but let me get back to it. Hang on a second. What date is that minute order? It is dated 12-14-2007. 12-14. I'm going to have to go at this a different way. I'm sorry, you gave it to me, but I apologize. Give me again the ER citation. Sure. ER 37 is the first page of the order. The footnotes I'm referring to are on ER 38. Hang on. I'm about to get it. Oh, I did have it. Okay, I'm with you now. I'm on ER 37, and where are you now? ER 38. Yeah. Judge Sully includes three footnotes in which he specifically states the areas that were of concern to him. The questions, how did you get involved in this case? Was there never a point prior to a conversation between you and Mr. Breskin or another lawyer at which there was a question in your mind about the B&O surcharge on your singular bill? These were questions in which there was an instruction not to answer based on privilege, and they did not ask for privilege. But if I'm reading this minute order correctly, as to those questions, he's not sanctioning. He's only sanctioning as to the third category of questions. Actually, but those, the third category, his third category in that order essentially talks about the ones prior. Those are the ones described in footnote three. Correct. In your reading from footnote one. Well, no, I'm sorry. I think I misstated that there. The category three in his order, in the text, not the footnotes, is that what you're referring to? Well, first I'll do the text on ER 38. Defendants are entitled to answers in all three categories of questions. Then in the next paragraph that has the Arabic three preceding the paragraph, in instructing Mr. Peck not to answer the third category of questions, plaintiff's counsel blatantly violated. So he's getting sanctioned, I think, for his instructions only as to the third category. Actually, I don't believe that is correct when you look at his subsequent sanction order. The subsequent sanction order dealt with privilege as well. The third category, the Mr. Peck questions, had to do with the relevancy instructions not to answer, the discharge from the Army and attendance at work, issues like that. The ultimate sanctions covered the attorney-client privilege issues as well. And are you now referring to the ER 41? Yeah, I think you are. Because that's the actual sanction order, right? Correct. And I have to admit, I'm not sure if it's ER 41, but it is. No, that's right. Okay, I got it. I'm with you. Okay. That was really all I wanted to point you to because I do think that provides what Judge Silley was concerned about. This was a sua sponte order by the judge asking for briefing on whether sanctions should be imposed. And so I believe that's why he provided as much detail as he did in those footnotes. I now know where we are. Thank you. And did the Court have any other questions? Okay. Thank you, Your Honor. We apologize for taking you over. Mr. Johnson. Thank you, Your Honor. We've taken both of you over, so if you can be fairly. Of course. I won't add any commentary to the record here unless there's any questions about any of the issues. If I could be indulged to add one thing about the sanctions order, which I think might be helpful, otherwise I wouldn't say it. The question that we think Judge Silley focused on both in footnote one of his first-minute order to show cause, ER 38, and then ultimately in levying sanctions for that very issue is the question, how did you get involved in this lawsuit? And, you know, Mr. Breskin instructed Mr. Renshie not to answer if you can't do so without divulging communications. Mr. Renshie said, I can't answer without revealing what Mr. Breskin told me. And then subsequently when the deposition was ordered, he did. He told him exactly what Mr. Breskin told me, which is, we've got this lawsuit. It involves this case, this charge, and, you know, he says, well, I'll take a look at my bills and get back, you know, the substance of the communication. Thank you very much. Thank you. Thank you both sides for your argument. The case of Renshie v. Singdiver Wireless is now submitted for decision. At this point, we will take a break. And Judge Tolman and I will come back to the bench fairly shortly. I can't give you a precise time, but it will be a few minutes.
judges: Fletcher, Gould, Tallman